IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

███████████,                *

    Plaintiff,              *

vs.                         *     CASE NO. 4:18-CV-68 (CDL)

███████████████,            *

    Defendant.              *

O R D E R

This breach of contract action arises from two twenty-year-old written settlement agreements in which Defendant ██████ ███████ released Plaintiff ██████████████ and others from liability for various claims. According to the settlement agreements, Defendant also agreed to keep certain matters about the released claims and the settlement agreements confidential. Plaintiff alleges that Defendant recently breached the settlement agreements when she, through her lawyer, revealed information about the released claims and the agreements to other lawyers while attempting to obtain another settlement for the previously released claims. Plaintiff seeks monetary damages as well as injunctive relief prohibiting Defendant from further breaching the confidentiality provisions. Defendant moves to dismiss Plaintiff's Complaint. Because Plaintiff's Complaint states a

plausible claim for relief, Defendant's motion to dismiss (ECF No. 15) is denied.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include enough factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. The Court may also consider documents that that are attached to a complaint because they are part of the complaint for all purposes. *GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 n.2 (11th Cir. 1993) (citing Fed. R. Civ. P. 10(c)). But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

Plaintiff's Complaint, including the exhibits, alleges the following facts, which the Court must accept as true for purposes of the pending motion:

## I. The Settlement Agreements

In 1992, Defendant retained counsel to pursue legal claims against Plaintiff. Defendant and Plaintiff eventually entered into an agreement under which Defendant released Plaintiff from liability in exchange for a sum of money (the "1992 Settlement Agreement"). Compl. ¶¶ 5–6, ECF No. 2; Compl. Ex. A, 1992 Settlement Agreement at 1–2, ECF No. 2-1. In 1993, Defendant retained new counsel to pursue additional claims against Plaintiff and others. Compl. ¶ 9. This dispute also resulted in Defendant signing a settlement agreement for which she received an additional sum of money (the "1993 Settlement Agreement"). *Id.* ¶¶ 10–11; Compl. Ex. B, 1993 Settlement Agreement at 1, 6, ECF No. 2-2. Both the 1992 and the 1993 Settlement Agreements contain confidentiality provisions prohibiting Defendant from disclosing certain matters about the released claims and the agreements to others. 1992 Settlement Agreement at 1–2; 1993 Settlement Agreement at 3.

## II. Defendant's Alleged Breaches of the Settlement Agreements

At some point, Defendant became dissatisfied with the settlement agreements and sought legal advice from her current

3

lawyer, ███. ███ also represents ███ ███ in an unrelated ███ suit ███████████████████████ ███ ███████████████████████████. In March, ███ sent ███'s lawyers in that matter a demand letter threatening to file suit on behalf of Defendant against ███, Plaintiff, and others unless they paid Defendant $50,000,000. Compl. ¶¶ 18, 20; *see generally* Compl. Ex. C, Letter from ███ to ███ *et al.* (Mar. 16, 2018), ECF No. 2-3 [hereinafter Demand Letter]. ███ rejected the demand, and Plaintiff's counsel sent ███ copies of the 1992 and 1993 Settlement Agreements. Compl. ¶¶ 22–23. Then, on Saturday, April 14, ███ sent an email to ███'s lawyers and Plaintiff's counsel containing a draft of a complaint and threatening to file the complaint on behalf of Defendant "first thing Monday am." *Id.* ¶ 24; Compl. Ex. D, Email from ███ to ███ *et al.* (Apr. 14, 2018), ECF No. 2-4; *see generally* Compl. Ex. E, Draft Complaint, ECF No. 2-5. ███ emailed the lawyers the following day and said, "Your clients have 12 hours left to decide whether they wish to have this dispute resolved in court." Compl. ¶ 27; Compl. Ex. F, Email from ███ to █ ███ *et al.* (Apr. 15, 2018), ECF No. 2-6.

**III. Plaintiff's Complaint & Motion for Temporary Injunctive Relief**

That same day, before Defendant could file the draft complaint on the public docket, Plaintiff filed his Complaint in this action,

4

alleging that Defendant's demand letter and the draft complaint contained confidential information under the 1992 and 1993 Settlement Agreements and that Defendant breached those agreements when ▮ sent the demand letter and draft complaint to ▮'s lawyers on her behalf. Compl. ¶¶ 19, 21, 25–26. Plaintiff also filed an emergency ex parte motion for a temporary restraining order ("TRO") seeking to prevent the public filing of the draft complaint and related materials. *See* Pl.'s Mot. TRO at 1–2, ECF No. 1.

Instead of ruling on the motion ex parte, the Court notified ▮ of the then-pending motion and held a hearing by telephone conference first thing the following Monday morning. Apr. 16, 2018 Order at 1, ECF No. 3. After the hearing and based on a review of the draft complaint and the 1992 and 1993 Settlement Agreements, the Court found that Plaintiff had shown a substantial likelihood that the public filing of the draft complaint would violate the confidentiality provisions of the settlement agreements, that Plaintiff would suffer irreparable injury by the public disclosure of such confidential information, and that the public interest would not be harmed by granting temporary injunctive relief. *Id.* at 2–3. Noting the presumption in favor of public access to court proceedings and related documents, the Court then balanced the public's interest in disclosure against the legitimate interests of the parties, including the potential

loss of part of the parties' bargained-for privacy. *Id.* at 3. The Court found that requiring Plaintiff to file the draft complaint and related matters under seal and sealing the present action was appropriate because the parties agreed that such matters should remain confidential and because the harm to the public's interest in disclosure was reduced in light of the temporary nature of the access restriction. *Id.*

The Court entered temporary injunctive relief as follows: (1) restricting access to any documents filed in the present action to the parties to this action, their counsel, and court personnel; (2) requiring Defendant to file any matters related to the draft complaint, including the complaint itself, under seal; and (3) prohibiting Defendant and anyone acting on her behalf from publicly disclosing or discussing the subject matter of the draft complaint and any other documents required to be sealed or restricted by the Court's order. *Id.* at 3–4.[1]  Defendant subsequently filed her Complaint under seal as directed by the Court. *See* Compl., ███████████████, No. 4:18-CV-83 (M.D. Ga. May 1, 2018), ECF No. 1. The issue currently before the Court is not whether these actions should remain under seal,

---

[1] The temporary injunctive relief does not prohibit Defendant from discussing matters related to the present action or the draft complaint with ███ or reporting other specifically identified matters. Apr. 16, 2018 Order at 4.

6

but whether the present action should be dismissed because Plaintiff failed to state a claim upon which relief may be granted.[2]

## DISCUSSION

Defendant argues that Plaintiff's Complaint must be dismissed because (1) the settlement agreements are not valid contracts under Georgia law; (2) the settlement agreements are unenforceable because they violate Georgia public policy and the First Amendment to the United States Constitution; (3) the settlement agreements are unenforceable because they were induced by fraud and duress; and (4) Defendant did not breach the settlement agreements because she did not disclose any information subject to the confidentiality provisions of the agreements.

**I.  The Settlement Agreements Are Valid Contracts Under Georgia Law**

Defendant contends that the settlement agreements are not valid contracts because Plaintiff never signed them.  Both settlement agreements provide that they are to be construed and interpreted under Georgia law.  1992 Settlement Agreement at 2; 1993 Settlement Agreement at 5.  And under Georgia law, "[s]ettlement agreements must meet the same requirements of formation and enforceablility as other contracts." *Stephens v. Castano-Castano*, 814 S.E.2d 434, 438 n.3 (Ga. Ct. App. 2018)

---

[2] The Court intends to enter a separate order directing the parties to show cause as to whether these actions should remain restricted from public access.

(quoting *Turner v. Williamson*, 738 S.E.2d 712, 715 (Ga. Ct. App. 2013)). Moreover, it is well settled under Georgia law that a party who signs a contract may be bound by her contractual agreement even if the other party did not sign the contract but performed his obligations under it. *See Comput. Maint. Corp. v. Tilley*, 322 S.E.2d 533, 537 (Ga. Ct. App. 1984) ("If one of the parties has not signed [a contract], his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound." (quoting *Cooper v. G.E. Constr. Co.*, 158 S.E.2d 305, 308 (Ga. Ct. App. 1967))); *see also Gruber v. Wilner*, 443 S.E.2d 673, 676–77 (Ga. Ct. App. 1994) (finding party's partial performance of consulting and profit sharing agreements bound the party to those agreements even though the party had not signed them).

Under the 1992 and 1993 Settlement Agreements, Defendant was to receive sums of money from Plaintiff in consideration for her release of Plaintiff and others from liability and her agreement to keep certain matters confidential. 1992 Settlement Agreement at 1; 1993 Settlement Agreement at 1, 3. Plaintiff alleges that he fully performed his obligations under the settlement agreements by tendering the required payments. Compl. ¶ 31. And the 1993 Settlement Agreement contains a copy of a check written to Defendant, which shows Plaintiff at least partially performed under that agreement. 1993 Settlement Agreement at 8. The Court

thus finds that the settlement agreements are valid contracts under Georgia law even though Plaintiff did not sign them.[3]

Defendant further points out that the 1992 and 1993 Settlement Agreements only became "effective upon execution by all parties," 1992 Settlement Agreement at 2; 1993 Settlement Agreement at 6, and argues, therefore, that Plaintiff's failure to sign the agreements shows that he is either not a party to the agreements or that they never became effective. To support this argument, Defendant relies on *MacDonald v. Whipple*, 615 S.E.2d 150 (Ga. Ct. App. 2005), in which the court stated that a contract is invalid "[w]hen the intent is manifest that the contract is to be executed by others than those who actually signed it" and those others do not sign it. *Id.* at 151 (quoting *Harris v. Distinctive Builders*, 549 S.E.2d 496, 499 (Ga. Ct. App. 2001)). Under *MacDonald* and related cases, the absence of a counterparty's signature prevents the formation of a valid contract when the other party's acceptance is conditioned on that signature, *see Harris*, 549 S.E.2d at 499, or when the contract involves the sale of the counterparty's interest in real property, *see MacDonald*, 615 S.E.2d at 151; *see also Peacock v. Horne*, 126 S.E. 813, 821 (Ga. 1925) (explaining that it is manifest that a contract to convey a party's interest

---

[3] The 1992 Settlement Agreement actually includes a separate signature page evidencing Plaintiff's signature. 1992 Settlement Agreement at 4. Defendant disputes the authenticity of that signature page, but, as explained above, Plaintiff's performance under the agreement is sufficient to show his assent to the settlement agreement's terms.

9

in timber requires that party's signature). Neither of those situations is present here, and the law generally allows for a party to execute an agreement by partial or full performance. *See Langford v. Milwaukee Ins. Co.*, 113 S.E.2d 165, 168 (Ga. Ct. App. 1960) (finding that a party's part performance constituted "execution" of the contract). And it is not otherwise manifest from the settlement agreements that the only way Plaintiff could "execute" the agreements was by signing them. The Court thus finds that the settlement agreements constitute valid contracts that became enforceable by Plaintiff when he paid Defendant the stated consideration as alleged in the Complaint.

**II. The Confidentiality Provisions Do Not Violate Georgia Public Policy or the First Amendment**

Defendant next argues that the confidentiality provisions of the settlement agreements are unenforceable because they violate Georgia public policy and the First Amendment. Defendant's counsel misunderstands Georgia public policy and the First Amendment. Georgia public policy does not generally prohibit confidentiality agreements. In fact, Georgia courts recognize that such agreements can serve "legitimate purposes." *Barger v. Garden Way, Inc.*, 499 S.E.2d 737, 741 (Ga. Ct. App. 1998). *But see Unami v. Roshan*, 659 S.E.2d 724, 727 (Ga. Ct. App. 2008) (finding confidentiality agreement entered into for the primary purpose of concealing a party's debt from another unenforceable because the party owed a

10

pre-existing contractual duty to inform the other of such a debt). Defendant accurately notes that "the public policy of Georgia does not permit parties to contract to keep embarrassing-but-discoverable matter secret" and that Georgia "public policy does not permit parties to enter into an enforceable agreement to keep arguably criminal matters secret in the face of an official investigation." *Camp v. Eichelkraut*, 539 S.E.2d 588, 597–98 (Ga. Ct. App. 2000). But the circumstances of the present case are clearly distinguishable from the situations where Georgia courts prohibit confidentiality agreements. Plaintiff does not contend that Defendant breached the confidentiality provisions by disclosing covered matters in civil discovery or pursuant to an ongoing criminal investigation. Thus, Georgia's public policy against prohibitions on such disclosure simply does not save Defendant under the circumstances alleged in Plaintiff's Complaint.

Moreover, Georgia law does not support the proposition that a confidentiality agreement is void in its entirety simply because the agreement does not expressly allow a party to "testify or otherwise comply with a subpoena, court order, or applicable law," *Barger*, 499 S.E.2d at 741. In those cases, the courts have instead found that the confidentiality agreements implicitly allow for such disclosure. *See id.* (implying term allowing disclosure pursuant to subpoena in the agreement and holding the trial court

erred when it concluded that a confidentiality agreement prohibited a party from disclosing matters during civil discovery); *Camp*, 539 S.E.2d at 598 (holding that trial court erred in directing verdict that party to confidentiality agreement breached the agreement by cooperating with police because permission to cooperate with investigative authorities is an implied term of the agreement). It follows that the confidentiality provisions in the settlement agreements here are not void just because they fail to express what Georgia courts would imply under well-established law.

Defendant further argues that enforcing the confidentiality provisions would violate her First Amendment right to engage in protected speech. The parties quibble over whether enforcing the provisions would involve "state action" and whether she knowingly waived her First Amendment rights when she signed the settlement agreements. But even assuming that enforcing the provisions involves "state action," Defendant's argument remains unpersuasive. In *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991), the Supreme Court addressed whether enforcement of a newspaper's promise to keep an informant's identity a secret under a state-law promissory estoppel theory would violate the newspaper's First Amendment rights. *Id.* at 667. The Court decided that "the First Amendment does not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state

law." *Id.* at 672. Similarly, the First Amendment does not confer on a private party a constitutional right to disregard promises that are otherwise enforceable under Georgia contract law. Accordingly, the Court finds that enforcing the confidentiality provisions under the circumstances alleged in the Complaint would not violate Defendant's First Amendment rights.

### III. Defendant's Fraud/Duress & Material Breach Defenses Are Premature

Defendant argues that Plaintiff's Complaint should be dismissed because the settlement agreements were procured by fraud and duress and because Plaintiff materially breached the agreements. These arguments rely on matters outside the Complaint, which the Court cannot consider when deciding the pending motion to dismiss. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (explaining that on a motion to dismiss a Court's review is generally cabined to the complaint and the documents attached to it).[4] Thus, these arguments, which are more suitable for summary judgment, are rejected as grounds for granting Defendant's presently pending motion to dismiss.

---

[4] The Court does not accept the allegations in the draft complaint attached to Plaintiff's Complaint as true for purposes of the pending motion because Plaintiff clearly disputes the veracity of those allegations. What the Court accepts as true for purposes of this motion is that the attached draft complaint is the draft complaint that ▓▓▓ sent to ▓▓▓'s and Plaintiff's lawyers and that ▓▓▓ threatened to publicly file on Defendant's behalf.

## IV. Plaintiff Sufficiently Alleged Breaches of the Settlement Agreements

Lastly, Defendant argues that even if the settlement agreements are enforceable, no breach occurred because neither the demand letter nor the draft complaint revealed any information subject to the confidentiality provisions in those agreements. Defendant is mistaken. For example, the confidentiality provisions of both settlement agreements prohibit Defendant from revealing "the fact or existence of" the settlement agreements, among other matters. 1992 Settlement Agreement at 2; 1993 Settlement Agreement at 3. Both the demand letter and the draft complaint disclose the existence of the 1992 Settlement Agreement. Demand Letter at 4; Draft Compl. ¶ 102. The draft complaint additionally discloses the existence of the 1993 Settlement Agreement. Draft Compl. ¶¶ 120-21. And if ▓▓▓ sent ▓▓▓'s lawyers the demand letter and draft complaint on Defendant's behalf as Plaintiff alleges, Defendant at a minimum breached her agreement to keep the fact and existence of the settlement agreements confidential.

## CONCLUSION

The Georgia courts recognize the near universally accepted principle that "[t]he law . . . favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." *Newton v. Ragland*, 750 S.E.2d

14

768, 770 (Ga. Ct. App. 2013) (quoting *Greenwald v. Kersh*, 621 S.E.2d 465, 467 (Ga. Ct. App. 2005)). Based on the allegations in Plaintiff's Complaint, the settlement agreements are valid contracts, and they contain enforceable confidentiality provisions. The demand letter and the draft complaint contain at least some information that Defendant unambiguously agreed to keep confidential pursuant to those provisions. And Plaintiff alleges that Defendant breached the confidentiality provisions when Defendant's lawyer sent those documents to third parties on Defendant's behalf. Accordingly, Plaintiff's Complaint states a plausible claim for breach of contract under Georgia law. Defendant's motion to dismiss (ECF No. 15) is therefore denied.[5]

IT IS SO ORDERED, this 7th day of August, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[5] Having decided today that the agreements are enforceable as alleged, the Court finds that a strong interest exists in honoring the parties' confidentiality agreements by restricting public access to these proceedings. The Court further finds, notwithstanding that interest, that there is a strong public interest in public access to judicial proceedings, particularly orders of the Court. Balancing these competing interests, the Court directs that this case be unsealed such that the existence of this action, the identities of the parties, and today's Order by the Court shall be shown on the public docket. However, until further order of the Court, all previous and future filings in this action shall be maintained and filed in a restricted manner such that they are accessible only by the parties, their counsel, and appropriate court personnel.